IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>       Plaintiff,<br><br>vs.<br><br>John Derrick Martin,<br><br>       Defendant/Movant. | CV 06-2302-PHX-JAT (BPV)<br>CR 02-0155-PHX-JAT<br><br>**REPORT AND RECOMMENDATION** |

On September 26, 2006, John Derrick Martin, ("Movant"), presently confined in the United States Penitentiary, Coleman, Florida, filed a Motion to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Motion") (Doc. 316)[1]. The Magistrate Judge recommends that the District Court enter an order denying the Motion.

Ordinarily, a court must conduct a hearing on a motion unless it "and the files and records of the case conclusively show that the petitioner is entitled to no relief ...." 28 U.S.C. § 2255. The Motion, as well as the files and records, do conclusively establish that Martin is not entitled to relief. *See Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989). Hence, no hearing is required.

---

[1] "Doc." refers to the document number in the related criminal matter, CR 02-0155-PHX-JAT, unless otherwise noted.

## I. PROCEDURAL BACKGROUND

On February 20, 2002, Martin was charged by a grand jury indictment in the District of Arizona with Conspiracy to Possess with the Intent to Distribute Cocaine in violation of 21 U.S.C. § 846, 841(a)(1); (b)(1)(A)(ii) and Attempted Possession with the Intent to Distribute Cocaine in violation of 21 U.S.C. § 846, 841 (a)(1);(b)(1)(A)(ii). (Doc. 1.) Ricardo Buelna and Steve Dobson were charged as co-defendants in both counts. (*Id.*) Prior to trial, Martin filed a motion to sever his trial from that of his co-defendants. (Doc. 43.) The motion was denied. (Doc. 79.)

On November 25, 2002, all three defendants proceeded to trial. (Doc. 119.) On December 10, 2002, defendant rested without testifying. (Doc. No. 140, RT[2] 12/10/02 at 180) The jury returned with verdicts of guilty as to all defendants on all counts. (Doc. 148-152.) On October 16, 2003, Martin was sentenced to serve the mandatory statutory minimum sentence of 240 months on Counts 1 and 2, to run concurrently, followed by ten years supervised release. (Doc. 247.)

A notice of appeal was filed on October 22, 2003. (Doc 251.) The Ninth Circuit Court of Appeals issued a memorandum decision on November 23, 2004 addressing Martin's argument challenging the sufficiency of the evidence, and affirming the convictions and sentence. *See United States v. John Derrick Martin, et al.*, 117 Fed. Appx. 509 (9th Cir. 2003) (unpublished disposition) (Doc. 295). The Court of Appeals issued its mandate affirming the decision of the District Court on September 27, 2005. (Doc. 304)

Martin, acting *pro se*, next filed the present § 2255 action. (Doc. 316.) He raises three grounds for relief. Martin alleges that he received ineffective assistance of trial counsel because: (1) Trial counsel did not file a pretrial motion to suppress the identification procedure; (2) trial counsel did not file a motion to sever from his co-defendants; and (3) trial counsel failed to investigate the scene where the crimes occurred. (Doc. 316, p.8-11.)

---

[2]"RT" refers to the reporter's transcripts in the related criminal matter, 02-0155-PHX-JAT.

1 Petitioner also renewed his argument that "under the Booker rule his sentence is excessive.
2 ..." (*Id*., at 11.)

3 On October 5, 2006, the District Court called for an answer from the United States
4 Attorney. (Doc. 320.) The United States filed a Response to Defendant's Motion to Vacate,
5 Set Aside or Correct Sentence on March 28, 2007. (Doc. 347.) On April 11, 2007, the
6 United States filed a Notice of Filing Affidavit in Support of the Government's Response in
7 Opposition to Motion to Vacate Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255,
8 along with an affidavit from Martin's trial counsel, James C. Braden. (Doc. 349.) No reply
9 was filed.

10 The Ninth Circuit reversed the District Court's decision denying the motion as barred
11 by the statute of limitations, as recommended by the Magistrate Judge in the first Report and
12 Recommendation, and, on July 13, 2010, the District Court re-referred this case to the
13 Magistrate Judge for the preparation of a Report and Recommendation on the merits of the
14 motion. (CV 06-2302, Doc. 18.)

15 **II.    FACTUAL BACKGROUND**

16 The Magistrate Judge has reviewed the docket and transcripts prepared in conjunction
17 with this case. They are adequately and accurately summarized by the United States in the
18 "Facts" section of Respondent's Response. (Doc. No. 347, at 3-10) It would serve no
19 additional purpose to summarize those details in this Report and Recommendation, for the
20 use of District Judge Teilborg, who, "sat through, presided over the trial" and had first hand
21 observations of the trial attorney in question. (See RT 3/10/03, 4-5) To the extent specific
22 citations are required to elucidate a specific claim, they will be specifically referenced.

23 **III.   MERITS**

24 Martin raises three grounds for relief, each ground alleging the ineffective assistance
25 of trial counsel. (Doc. 316.) Martin alleges that trial counsel was ineffective because:

26    (1) He failed to file pretrial motions to suppress the identification procedure
27         utilized by the police to identify Martin as the co-conspirator known by the
28         nickname "Rabbit."

- 3 -

      (2)     He failed to file a motion to sever Martin from his co-defendants.

      (3)     He failed to properly investigate the case against the defendant.

(*Id.*, at 4-5.)

      A.     <u>Ground One</u>

In ground one, Martin contends that his trial attorney should have examined Agent Goodman regarding his previous history with the petitioner, and that this line of questioning would have enabled counsel to attack the identification of the defendant as "Rabbit" because the agents asserted they did not recognize the driver of the Suburban, and it would have been "extremely doubtful these officers would not have recognized the petitioner if he had truly been the driver of that [S]uburban." (Doc. 316, at 8.)

The present case was initiated when a confidential informant advised Special Agent Patrick Campbell, with the United States Drug Enforcement Administration ("DEA"), that he had received information that Ricardo Buelna was in possession of 10 kilograms of cocaine that Buelna intended to ship or have transported to his customers in Nashville, Tennessee. (RT 11/26/02 , at 51.) Working with the confidential informant, Undercover DEA Task Force Agent Angelo Calderone, agreed to deliver cocaine to co-defendant Buelna's customers in Nashville, TN. "Rabbit" was the nickname of the person who was to receive the shipment of cocaine in Nashville, Tennessee.(RT 11/27/02 [Verdugo] 18-19.)[3]

  Martin's identity and involvement   as the co-conspirator known as "Rabbit" was summarized by the Court of Appeals as follows:

> ...during several phone conversations co-defendant Buelna called his customer "Rabbit" to meet the undercover officer for delivery of the duffel bag, and it was "Rabbit" who provided the description of the person who would pick up the bag. The Suburban driven by "Rabbit" the day of the transaction was registered to John Martin. Three different officers identified Martin both before and during trial as the man who was driving the Suburban. One of the cell phones used during the transaction was unlocked using the last four digits of Martin's social security number. After seizure of the bag, Buelna and Martin spoke on the phone, at which time Buelna learned that Dobson was

---

[3]The trial testimony of several witnesses was transcribed separately during the course of the trial. Accordingly, more than one transcript exists for several trial dates. On those trial dates, the witness's name is provided for clarity.

- 4 -

1 | Martin's uncle.
2 | (Doc. 304, p. 4-5.)

3   The prosecution presented evidence that Defendant Martin has been known as "Rabbit" since at least 1993. During a prior law enforcement contact in 1993, Martin stated that his nickname or street name was "Rabbit." (RT 12/5/02 [Donegan] 14-15.) Additionally, defendant Martin admitted to Agent Goodman at the time of his arrest on the current charges that some people called him "Rabbit." (RT 12/5/02 [Goodman] 47-48.)

8   Martin argues that counsel "could have examined agent Goodman regarding his previous history with the petitioner especially the 1993 conviction" and that this "would have enabled counsel to attack the identification of the defendant as '[R]abbit' because the agents asserted they did not recognize the driver of the [S]uburban and only got his name after a DMV check and an officer viewing his license photograph." (Doc. 316, at 8.) Martin seems to be arguing that, because he had a prior conviction and contact with law enforcement in 1993, and was known by the street name "Rabbit" at that time, the credibility of the three officers who identified him as the driver of the Suburban but failed to identify him personally would have been called into question at a suppression hearing. In other words, had he actually been driving the Suburban, the officers should have recognized him.

18   Martin's argument rests on the premise that the three officers who testified in this case that they viewed Martin in the Suburban, and later identified him as the man who was driving the Suburban, Agents Goodman, Baggett, and Hardcastle, should have recognized him when they saw him in the Suburban because of their "previous history" with Martin. It was, however, Officer Gene Donegan, with the Metro Nashville Police Department, and not any of the three agents who identified Martin in the present case, who testified that he knew Martin by his nickname "Rabbit" in 1993. (RT 12/5/02 [Donegan] 13-15.) Officer Donegan was not involved in the investigation which led to the convictions in the case at hand, and testified only to the fact that he established Martin's nickname, in 1993, as "Rabbit." Martin alleges no facts that support his contention that Agents Goodman, Baggett, and Hardcastle, knew, or should have known, Martin's identity from their "previous history" with him.

- 5 -

The two-prong test for establishing ineffective assistance of counsel was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88. There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 689-90.

Deficient performance requires that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 694. Defendant must also show prejudice resulting from deficient performance by counsel. To show prejudice Defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 694; *Luna v. Cambra*, 306 F.3d 954, 961 (9th Cir. 2002), *amended by* 311 F.3d 928 (9th Cir. 2002). A reviewing court can reject a claim based upon a failure to meet either part of the two prong test. *See Thomas v. Borg*, 159 F.3d 1147, 1151 (9th Cir.1998); *United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994); *see also Strickland*, 466 U.S. at 687.

The Magistrate Judge finds that Martin''s allegations of ineffective assistance of counsel for failure to are entirely unsupported by the record. Martin has failed to demonstrate that any of the three agents who identified him in the present case had a "previous history" with Martin. Moreover, Martin has not alleged any facts suggesting that a motion to suppress would have been likely to succeed. There is no allegation of any facts which would support a challenge to the pretrial identification procedure, such as a specific allegation that the pretrial identification procedure was impermissibly suggestive. Movant having failed to support his claim with anything more than vague, conclusory, and inaccurate statements, the Magistrate Judge recommends that ground one of the motion to vacate be denied.

1  B.     Ground Two

2  Martin alleges that counsel should have moved prior to trial to sever him from co-
3  defendant Dobson, because it is Martin's belief that "co-defendant Dobson wished to testify
4  on [Martin's] behalf but was admonished by counsel not to do so. (Doc. 316, at 8-9.)

5  Respondent asserts that this claim is factually incorrect because Martin in fact filed
6  a motion to sever on June 28, 2002. (Doc. 43.) The motion was denied. Respondent argues
7  that Martin's claim is thus procedurally defaulted because he did not raise the issue on direct
8  appeal.

9  Respondent's argument, however, misses the mark for two reasons. First, Martin did
10 not argue the same grounds for severance to the trial court that he is raising here; that
11 severance should be granted because his co-defendant refused to give exculpatory testimony
12 in a joint trial due to a potential for self-incrimination. The basis for Martin's motion before
13 the trial court was that the Government would be presenting evidence against a different co-
14 defendant, Buelna, that would be hearsay as to the identification of Martin as "Rabbit" and
15 Martin could not cross-examine him regarding the references to Rabbit if Buelna didn't
16 testify. (RT 8/28/02, at 37-40.) Additionally, Martin argued that the bulk of the evidence in
17 the case was against the co-defendants, and there was very little evidence linking Martin to
18 the case. (*Id.*)

19 Second, Martin is not asserting in his motion to vacate that the trial court's denial of
20 the motion was error; Martin asserts that there was another basis for a motion to sever
21 altogether, and counsel was ineffective for not raising it. Martin's claim rests on the mere
22 assertion that it is his belief that "co-defendant Dobson wished to testify on [Martin's] behalf
23 but was admonished by counsel not to do so." Because this claim is both vague and
24 conclusory it does not require further consideration by the court. *See Shah,* 878 F.2d at 1161
25 ("Mere conclusory allegations do not warrant an evidentiary hearing.").

26 Martin has not established, or even alleged, that Dobson would in fact have testified
27 if a severance would have been granted, or that the testimony would be favorable to the
28 moving defendant, a necessary condition for severance. *See United States v. Mariscal*, 939

1 F.2d 884, 886 (9th Cir. 1991) ("a moving defendant must show more than that the offered testimony would benefit him; he must show that the codefendant's testimony is 'substantially exculpatory' in order to succeed."). A showing that the testimony would merely contradict portions of the government's proof is insufficient. *Id*.

It is also not clear from Martin's claim whether he believed that Dobson was admonished by Dobson's counsel, or Martin's counsel, not to testify. If in fact it was Dobson's counsel, this does not support Martin's claim. If Martin is alleging that it is his belief that his own counsel advised Dobson not to testify, the claim is vague and conclusory, as noted above. Martin has not demonstrated why he believes counsel advised Dobson not to testify, and what evidence supports such a belief. In opposition to Martin's belief, the Government has submitted an affidavit from Martin's trial counsel avowing that, based on contact with Dobson's counsel, he determined that Dobson would not testify on Martin's behalf. (Doc. 349-1, ¶ 4.)

To be entitled to relief from counsel's failure to move for severance, Martin must show both that the motion would have been granted and that he suffered prejudice as a result of the unsevered trial. *See United States v. Rodriguez-Ramirez*, 777 F.2d 454, 458 (9th Cir. 1985)(no ineffective assistance of counsel when defendant failed to show severance motion "could have been granted" and he "suffered prejudice as a result of the unsevered trial"). Martin has not made any significant showing that his counsel's failure to file a pretrial motion for severance of his trial from that of Dobson constituted ineffective assistance. Martin has made no showing that Dobson would have testified had Dobson and Martin's trials been separated, nor has he shown that Dobson's testimony would have been substantially exculpatory. Accordingly, the Magistrate Judge finds that Martin has not established a violation of *Strickland* based on counsel's alleged failure to move for severance and recommends that ground two of the motion to vacate be denied.

C.  Ground Three

Martin asserts in ground three that his counsel was ineffective in not requesting funds for an investigator. Martin alleges that most of the incriminating witnesses resided in

- 8 -

1  Nashville prior to the trial, and if counsel was not going to seek to interview these witnesses
2  or examine the scene, "he should have applied for funds for an investigator to do so."
3  Specifically at issue, Martin asserts, is whether "from the Shoney's restaurant one can view
4  the occupants and activities of a vehicle across the street and behind a Kinko's print shop.
5  Or, could one in a sedan drive around that Kinko's parking lot and view upwardly to the
6  occupant of a Suburban so as to later make a sufficient out of court identification?" (Doc.
7  316, at 9.)  Martin argues that "[p]roper impeachment of the testifying officers regarding
8  lighting, distance and opportunity to view was essential to an effective defense."  (*Id.*)

9  Defense counsel has a "duty to make reasonable investigations or to make a
10 reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S.
11 at 691.  This includes a duty to investigate a defendant's "most important defense" and to
12 "investigate and introduce into evidence records that demonstrate factual innocence, or that
13 raise sufficient doubt on that question to undermine confidence in the verdict." *Bragg v.*
14 *Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001), *amended on denial of reh'g* 253 F.3d 1150 (9th
15 Cir. 2001)(citations omitted).

16 Martin's suggestion that viewing the scene would have allowed for proper
17 impeachment is conclusory and speculative.  "[I]neffective assistance claims based on a duty
18 to investigate must be considered in light of the strength of the government's case." *Eggleston*
19 *v. United States*, 798 F.2d 374, 376 (9th Cir.1986)   As noted by the court of appeals, the
20 evidence implicating Martin as Buelna's customer in Tennessee was extensive.  Buelna
21 referred to his customer as "Rabbit" and it was "Rabbit" who provided the description of the
22 person who would pick up the bag.  The Suburban driven by "Rabbit" the day of the
23 transaction was registered to Martin. One of the cell phones used during the transaction was
24 unlocked using the last four digits of Martin's social security number.  After seizure of the
25 bag, Buelna and Martin spoke on the phone, at which time Buelna learned that Dobson was
26 Martin's uncle. Additionally, in 1993, Martin had stated to law enforcement officers that his
27 nickname was "Rabbit" and admitted to Agent Goodman at the time of his arrest on the
28 current charges that some people called him "Rabbit." Additionally, Respondent asserts that

- 9 -

1 pretrial discovery included a videotape shot by a stationary surveillance vehicle located in
2 the Shoney's parking lot, and numerous photographs of the Nashville locations. Martin's
3 trial counsel avows that he thoroughly reviewed the disclosure, including the surveillance
4 videotape and photographs of all relevant locations. (Doc. 349-1, ¶ 7.) Martin fails to
5 demonstrate how additional examination of the location would have produced any
6 impeaching evidence. The Magistrate Judge finds that, given the information counsel had
7 previously obtained through pretrial disclosure, counsel's failure to conduct further
8 examination of the scene was not unreasonable.

9 Martin does not identify any information that trial counsel had not obtained from law
10 enforcement reports that he would have gained from interviewing the agents in Tennessee.
11 There is no evidence that interviewing the witnesses would reveal evidence "demonstrat[ing]
12 factual innocence, or that raise sufficient doubt on that question to undermine confidence on
13 the verdict." In fact, Martin does not even speculate what these interviews would have
14 produced.

15 Martin has not made a persuasive showing that counsel's failure to investigate was
16 "unreasonable under prevailing professional standards." The Court is not aware of counsel's
17 precise reasons for not requesting interviews of the witness or examining the scene, though
18 it is clear that counsel had obtained relevant discovery regarding both the witnesses and the
19 location of the transaction. On this record, however, the Magistrate Judge can conclude that
20 Martin has not made a sufficient showing of cause to demonstrate ineffective assistance of
21 counsel for failure to investigate.

22 Even if the failure to examine the scene or interview witnesses was unreasonable,
23 Martin has failed to demonstrate prejudice. The test for prejudice with respect to defective
24 investigations is "whether the noninvestigated evidence was powerful enough to establish
25 a probability that a reasonable attorney would decide to present it and a probability that such
26 presentation might undermine the jury verdict." *Mickey v. Ayers*, 606 F.3d 1223, 1236-37
27 (9th Cir. 2010)(citing *Wiggins v. Smith*, 539 U.S. 510, 535 (2003)). Martin has not shown that
28 he was prejudiced as a result of his defense attorney's failure to interview the law

1  enforcement officers or examine the scene.  Petitioner has not made any showing that, but
2  for counsel's deficient performance, there is a reasonable probability that the result of the
3  proceeding would have been different.  "[T]he duty to investigate and prepare a defense is
4  not limitless: it does not necessarily require that every conceivable witness be interviewed."
5  *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir.1995) (citations and quotations omitted).
6  Petitioner has not provided evidence that interviewing any of the witnesses in Tennessee
7  would have revealed information that did not otherwise come to light.  *See Bragg,* 242 F.3d
8  at 1088 ("A claim of failure to interview a witness cannot establish ineffective assistance
9  when the person's account is otherwise fairly known to defense counsel.").  Respondent
10 asserts that all of the Tennessee witnesses were law enforcement officers.  Martin was
11 provided copies of all law enforcement reports made in connection with the investigation,
12 and Martin's counsel thoroughly reviewed the reports. (Doc. 349-1, ¶ 8.)  When the record
13 clearly shows that the lawyer was well-informed, and the defendant fails to state what
14 additional information would be gained by the discovery he now claims was necessary, an
15 ineffective assistance claim fails. *Eggleston*, 798 F.2d at 376.  The law enforcement officers
16 were under no legal obligation to be interviewed by counsel.  Martin's bare assertion that
17 these witnesses should have been interviewed cannot support an ineffective assistance claim
18 absent any evidence that these witnesses would have submitted to an interview or how those
19 interviews would have changed the outcome at trial.

20 Finally, Martin cannot establish prejudice from counsel's failure to examine the scene
21 because he does assert any facts at all that could have been discovered by viewing the scene,
22 or how viewing the scene would have effected the outcome of the trial.

23 Accordingly, the Magistrate Judge finds that Martin has not established a violation
24 of *Strickland* based on counsel's alleged failure to investigate and recommends that ground
25 three of the motion to vacate be denied.

26 **IV.   RECOMMENDATION**

27 After careful consideration of the Motion to Vacate, Set Aside, or Correct Sentence
28 and all papers filed in this action, the Magistrate Judge recommends that the District Court

- 11 -

1 deny Movant's motion.

2 Pursuant to Title 28 U.S.C. § 636(b), any party may serve and file written objections 3 within fourteen (14) days after being served with a copy of this Report and Recommendation. 4 A party may respond to another party's objections within fourteen (14) days after being 5 served with a copy thereof. Fed.R.Civ.P. 72(b).

6 If objections are not timely filed, then the parties' right to *de novo* review by the 7 District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 8 1121 (9th Cir 2003) (*en banc*).

9 If objections are filed, the parties should use the following case numbers: **CV 06-** 10 **2302-PHX-JAT and CR 02-155-PHX-JAT.**

11 DATED this 15th day of September, 2010.

_____
Bernardo P. Velasco
United States Magistrate Judge

- 12 -